Good morning. May it please the court, I'm Lawrence Lassiter, representing your appellant. This case is about procedural error, multiple procedural errors that we've identified and discussed in our briefs. Let's start out with something pretty basic. The Supreme Court gave us in Twombly and Iqbal the plausibility standard on a Rule 12 motion. They said that in applying the plausibility test, a court must take the allegations in a complaint as true, quote, no matter how skeptical the court may be about those allegations. Well, that did not happen here. Instead, the district court below looked at extrinsic evidence. And the moment the district court decided to do that, under Rule 12D, it was required to turn the motions into Rule 56 motions and follow those procedures. It did not do that. And how we got here is something of a function of the creation of the MDL. But there isn't any authority, as far as I am aware, that says when your case gets sent to an MDL, the protections of the rules of civil procedure, Twombly and Iqbal standard, Rule 56, Rule 12D, go away, just because you were made part of an MDL. These cases were not consolidated. What happened in the procedural history, which we lay out in the briefs, is rather complicated. But there were some cases pending in the Southern District before the MDL was created. And the judge asked those plaintiffs to basically pick one case, and then they would rule on the motion to dismiss. So that happened. After that ruling, then the MDL was created. And then that plaintiff was given another chance to plead, and they attached a bunch of studies and articles to the complaint. So that ruling happened, and then the judge did the order to show cause procedure, which is not an improper thing. We didn't object to that. What we did instead was show cause. The complaints of your plaintiffs now, none of them have those documents attached. They don't have pages and pages of studies from the British Medical Journal and other places. I don't understand why going from a detailed complaint to a conclusory complaint allows you to survive Iqbal and Twombly. You have to make a plausible claim, and this is an area that's been highly litigated, the contrast between state tort law and the FDA's warning requirements. Why isn't it reasonable for the district court, without even looking at or knowing about prior studies that had been attached to an earlier complaint or in a different complaint, why isn't it entirely plausible or reasonable for the district court to look at your complaint and say, your conclusory allegations don't suffice to make a plausible claim that will survive or has a colorable chance of surviving a preemption attack? If that's what had happened here, if that had actually occurred, I think that might be possible. There are two responses I would have to that. One, that's not what the district judge did here. She talked about that a little bit, but if you look at the orders, both the Fortner order and the orders in the specific cases that are still left, she makes it clear that she looked at the sources. She pierced the allegations in the complaint and looked at the sources behind there. She necessarily did that. And the second thing is it is unclear under the case law whether a complaint has to affirmatively plead around what the Supreme Court has identified as an affirmative defense, which is impossibility preemption. That's what this is about. And as far as I can tell, I think there's one case in the First Circuit where they indicated, and it's cited in the defendant's brief, where they allowed impossibility preemption to be discussed as part of a Rule 12b6 motion, but it's an affirmative defense. One of the things we talked about in our briefing, St. Patricia Segovia's complaint, was filed in the District of Hawaii. That same complaint was still decided by the district court below. In the briefing in Hawaii, there's a footnote in the defendant's brief that says, by the way, Judge, we're going to file a motion at some point on the preemption issue, a summary judgment motion, because that's when it's supposed to happen. So the district court did two things wrong here. And you can look at the quotes. She says it. She's looking at the sources behind the allegations. The other thing is that there are allegations in this complaint about information that these defendants got post-marketing, which is the same thing as post-approval, that they had reports about hemorrhaging that should have triggered additional studies. That's what Judge Cote found to be wholly conclusory, right? That's what she found to be wholly conclusory. That's what she said. Why isn't it wholly conclusory? We've got articles. We won't tell you what they are, when they were, or what they consist of. But believe me, there are articles. And that's enough under Iqbal Twombly? We still have notice pleading. Still Rule 8. This is not a Rule 9b fraud where we have to plead with particularity, as Apalese argued. But you have to plead facts, though, right? We have to plead facts, yes. And her conclusion was the complaint simply doesn't provide sufficient factual content to support the inference. She says that. But if you read her whole opinion, it's clear that that's not done in a vacuum, that she necessarily looked at information outside the complaint. And you're not supposed to do that. You're certainly not supposed to do that in this context where you're asking a plaintiff to affirmatively plead around impossibility preemption. That's a separate set of error right there. Impossibility preemption is a question of fact, unless you're in a situation like, say, in the mensing case, mensing versus plievo. The Supreme Court said no matter how you plead it, it's impossible, because a generic manufacturer could not have changed the label as a matter of law. That's different than our situation. This is not a generic manufacturer. This is a Weiss versus Levine manufacturer, developer of the drug. So the standard there is different. Aside from the one-fifth First Circuit decision, which has on its unique facts what they were trying to avoid having to assess California law, there are no cases that suddenly take an affirmative defense and put the burden on the plaintiff to plead around it and prove it. So your argument is that you weren't required to plausibly plead that an additional warning could have been made in the first instance? We have pled that additional warnings could be made. So you agree that you have to plead that? We have to plead the elements of your cause of action, yes, and we've done that. But preemption is not part of the cause of action. There's no authority so far that says you have to affirmatively plead that your claim is not preempted. That's an affirmative defense. Well, but if the complaint contains facts that would, on its face, demonstrate the applicability of that defense, then I guess you need to plead facts that would overcome preemption, right? If the complaint . . . You're talking about like similar to, say, a statute of limitations kind of situation where you could see the facts in the complaint that would establish all the elements of an affirmative defense. Is that . . . Yeah. That's right. Okay. And that's not this situation because we have pled allegations of information that this defendant had that they should have had an obligation to warn about, which is what we did. We pled the elements of the claim. Newly acquired information that would then trigger or would avoid the need . . . would avoid preemption, right? Yeah. That would have led you to the possibility that you could have done a change the CBE change to the label, which is what makes a Wife v. Levine type of case different from Menting v. Plea. I've got a red light. I'll sit down. Thank you, Judge Livingston. I may please the Court. Neal Katyal for the defendant at Pelez. The plaintiffs have only one claim left, which is failure to warn, and there is only one route for that claim not to be preempted, which is the defendants have to be able to unilaterally change their drug label. And under the Supreme Court's recent decision in Menting, that means plaintiffs have to plead sufficient facts to allow the court to draw the reasonable inference that there was information not previously submitted to the FDA that reveals risks of a different type or of greater severity or frequency. And as the district court found, the plaintiffs failed. The complaint doesn't identify any newly acquired information about this critical life-saving drug, and indeed information about the types of risks and their severity and frequency is all over the label and was submitted to the FDA. Your adversary makes the argument that this is really, the preemption is in nature of the affirmative defense and needn't be played around in the initial complaint. Why is that wrong? So we agree that oftentimes preemption and affirmative defense is something that is decided later, but this is a unique context. This is something which the FDA is really heavily regulating this fear, and there's only one way for their claim to survive. They have to be able to show that we actually could change the label, and the drug label is a very complicated balancing of things. And so that's why, for example, the First Circuit in the Selecsa decision, which my friend acknowledged, is a very clear case in which, on a motion to dismiss, very similar facts to this, the court there granted the motion to dismiss. It was upheld by the First Circuit because they said it would be impossible to comply unless the complaint comes forth with newly acquired information. And it's not, you know, my friend on the other side, well, but that's not the rule in Mensing. And if you read his brief, you know, you'd think, wow, maybe Plieva v. Mensing said the reverse. But as our brief points out, they quote page 634 of Mensing, which is actually the dissent. The majority never said that. And indeed, there were three cases that came to the court, the Supreme Court, in the Mensing case. Two of them were actually motion to dismiss cases, and both of those cases, on remand, after the Supreme Court's decision, those motions to dismiss were granted. It still seems kind of strange, though, that, I mean, these even granting that the allegations here are somewhat conclusory, you would think that if they need to show, would need to show in order to recover that they were entitled under FDA regs to change the label unilaterally. That can be difficult to establish. That takes studies and, you know, adverse event reports and recently discovered information and so on. It seems kind of not very suitable to addressing on a motion to dismiss. Judge Carney, I agree with you. Sometimes that will be the case. And, you know, if the complaint alleges newly acquired information and the like, then it's a very different ballgame. What you have here, though, as Judge Cote found after exhaustive study of the complaint, is no allegation of newly acquired information. All of those risks, like bleeding, disclosed 65 different times on the label and the accompanying information. So there might be some case like that. I just don't think this is even close to that case. And that is why, you know, that is why Judge Cote reached the decision she did. And I think it picks up on what Judge Sullivan was saying earlier, which is, look, ordinarily affirmative defense is absolutely, the burden of proof is on the defendants and the like. It's not part of pleading. But when something is evident on the face of the complaint, affirmative defense, then it's a very different situation. Indeed, you were on a decision that Judge Pooler wrote in the Chen case, which are brief sites, in which exactly that point was made, that if, you know, an affirmative defense there, the Fair Labor Standards Act and recreational exception, you know, if that defense is evident on the face of the complaint, then that is really where the burden, excuse me, then that is something suitable for a motion to dismiss. And if you accepted my friend's invitation, you would be creating a split with the First Circuit. And this just seems like exactly the wrong case in which to do something like that. It's not just, by the way, Chen, I mean, even this court in the Ritchie case, which was a preemption case, said it's suitable to decide on a motion to dismiss. I think when both of you sat together last in the Honeywell case, Bartlett v. Honeywell, you affirmed a motion to dismiss on the pleadings as well. So I think these things do happen, again, only under the narrow circumstance that Judge Sullivan is pointing out, in which it is evident on the face of the complaint. So that's one set of arguments for why my friend's failure to warn claim isn't, I think, viable. And then Judge Cote reached a separate alternative ground, an independent ground, which was that the labels are adequate. And she goes meticulously through. In terms of the adequacy of the labels, I detected a kind of implication that the label to be effective, I mean, it's very, very long, but ought to compare eloquence to warfarin in terms of bleeding risks and absence of an antidote and so on. Is that something that typically could come up as a unilaterally imposed amendment? Oh, heavens no. We could not, just because a new drug comes on the market or something like that, we couldn't on our own do that and change the label. That would be something the FDA would require us to go through a whole set of proceedings. Now, on the no antidote, that was something that we disclosed to the FDA, and that is why Judge Cote says, quotes, and this is at the addendum at page five, a specific antidote for Eliquis is not available. That's in the label itself, and Judge Cote quotes exactly that language. So the things that they point out, and I think this is maybe the most critical point on their whole failure to warn claim, whether on preemption or on the adequacy of the label, is Judge Cote kept saying, look, tell me where in your complaint you're alleging newly acquired information that was not disclosed to the FDA. They didn't do it there. Then, on appeal, they filed two briefs before you. They've had two opportunities to say, here's a part of our complaint, here's a paragraph in our complaint that says newly acquired information. They haven't done it there, which is, you know, this is a critical life-saving drug. This is a really important drug, and, you know, these kinds of conclusory allegations are extremely dangerous. If I could just ask it from interest. It says there's no antidote, but presumably if you taper off Eliquis, at some point your coagulation rate gets back up to normal, right? Absolutely. So, you know, there's no immediate antidote. And then there's a box warning, which warns you that if you do taper off, you better substitute with something else because otherwise there's a risk of stroke or something that's at the very top of the label. If there are any other questions on failure to warn, otherwise I'll just spend a moment on removal if there are any questions there. So just on the removal issue, there's basically two independent arguments. One is the strong caterpillar doctrine, which says that basically, you know, the appeals from a failure to remand are basically impermissible. And then the second is just the language of the removal statute. And I'd like to draw your attention to our 28J letter. The Third Circuit, after our brief was filed, in a pretty detailed opinion, just read the statute, read the plain text of the statute, and said, look, it says joined and served. Here the defendants were not served. So I think we end up drawing a distinction between a peculiar result and an absurd result in order to deal with the mechanism that has been set up here. How do you distinguish those? Why isn't it an absurd result to require service? So we really manifestly don't think it's an absurd result. But even if you disagreed, I think that would just push you in favor of caterpillar and saying, look, this is not suitable for appellate review. You wouldn't want to create a split with the Third Circuit in a case like this. But just on its own terms, the absurdity doctrine requires such a manifest standard. I mean, it's got to be, as Chief Justice Marshall said, something monstrous to all person kind. And they don't even come close. And I think the Third Circuit explains why. The Third Circuit said, look, they were dealing with a circumstance of certainly fraudulent joinder and things like that, and they filled it with a statute. Maybe you think it's broader than its purposes, but there's no requirement that a statute should be read narrowly tailored to its purposes. That would really undo so much of the federal code, actually. And so that's one point. And the second is our brief explains there is actually a really important reason why you could imagine Congress drawing the line at service, because service marks the point at which a state court exerts control over a defendant. And for purposes of federalism, you could see Congress saying, look, okay, we really like these cases in federal court. They're diversity cases and so on. We don't want to rip them away from a state court once that process is really ongoing. And that process doesn't really start until service. And that's what the Supreme Court's decision in Murphy Brothers recognizes. But there's an argument to the contrary about when is a proceeding pending in state court. And in some cases, service needs to have been made. In other cases, not. I mean, doesn't this create just a terrible kind of checkerboard? It very well may. And that's exactly the choice Congress made by pegging all of this to service, a process which they obviously knew varies from state to state both in 1948 and certainly by 2011 when they redid the entire statute and resolved all sorts of circuit splits up and down. But the one thing they left intact was the language of 1441b2. So that's Congress's affirmative choice. And I certainly think it would be dangerous for this court to start monkeying with it. If there are any other questions. Thank you. I cited the language in Mensing, the dissent, because it's better language. But the majority of the Mensing court also talks about the manufacturer's federal affirmative defense of preemption. That's at page 619. This is a brand drug. Mensing is not the law. Wythe v. Levine is still the law for a brand manufacturer. And the court in Wythe said and talked about, quote, the burden in establishing a preemption defense. Preemption is still a defense. The Chin case is an express preemption claim. The whole field has been expressly preempted by federal law. You can figure that out without having to look at the facts. The law is clear. You decide on a motion to dismiss. This is impossibility preemption. There are facts issues. If you read the First Circuit's decision, all that court there does is talk about things that are in the complaint. If you read Judge Coates' decision, you will be taken back inextricably to the 32 pages of the Utz II decision, where she plays amateur epidemiologist and statistician. If I tried to do that, they would ask me to have a Daubert hearing. But the judge did that. Frankly, that's not something a district judge should be engaged in on her own. That's why these issues are decided at the summary judgment stage. There's a bunch of complaints here. Let's look at that Segovia complaint again. Paragraph 40, before and after approval in marketing, defendants became aware of many reports of severe hemorrhaging. They did not alert or perform more investigations. Paragraph 44, paragraph 67, paragraph 102, paragraph 104, just in the Segovia complaint, allegations that normally would be sufficient to say that there was information that this manufacturer acquired that they should have disclosed. As my colleague pointed out, the Third Circuit has now had a decision on the snap removal question. I would ask the court to look at footnotes three and four of that decision, where the court says, here's the things we didn't look at. We didn't look at the fact that, unlike in 1948, I can open up this iPad, which I got an order to bring in, by the way, and find out if I've been sued. I don't have to go down to the courthouse anymore. I can find out if I've been sued. And they said, nobody talked to us about whether this is happening around the country. It's happening all over the place. But the footnote ends with the legislature is well suited to address the issue. That's their answer. That was the theme. That's their answer. So there are a lot of different ways one could answer. And it's up to this court. It is happening all over the place. As we said in our brief, the issue is split next door. They're not sure. It depends on which judge you get. It needs to be decided one way or another. We think it is an absurd, or what's the other word? Absurd. It's an absurd result. And Congress, at least normally, isn't in the business of expanding federal jurisdiction. They like to tamp it down, at least with diversity. And we think that's what you should do. All right. I've got a red light again. I thank you for your time today. Thank you both. Well argued. So that concludes the calendar for this morning. And so I will ask the clerk to adjourn court. Court is adjourned.